CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
YOUNG J. KIM (Bar No. 264195)
Deputy Federal Public Defender
(E-Mail: Young_Kim@fd.org)
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
MICHAEL ALLEN STARKWEATHER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL ALLEN STARKWEATHER, <br><br> Defendant. | Case No. ED CR 22-00271-SVW <br><br> **MICHAEL ALLEN STARKWEATHER'S SENTENCING MEMORANDUM; EXHIBITS** |

## I.     INTRODUCTION

Michael Allen Starkweather is before the Court for sentencing after pleading guilty to one count of possession of an unregistered firearm, in violation of 26 U.S.C. Section 5861(d). Mr. Starkweather entered his plea pursuant to a plea agreement ("Plea Agreement") in which the parties agreed to an offense level under the United States Sentencing Guidelines (the "Guidelines") of 21 after acceptance of responsibility. In its Presentence Investigation Report ("PSR"), the United States Probation Office (the "USPO") places Mr. Starkweather in Criminal History Category ("CHC") VI with 25 criminal history points and determined that the offense level is 21 under the Guidelines.

PSR, ¶¶ 35, 55. An offense level of 21 and a CHC of VI results in a recommended Guidelines range of 77 to 96 months in custody.

Further, Mr. Starkweather and the government agreed in the Plea Agreement to seek a sentence of 87 months of custody. Mr. Starkweather has no objections to the calculation of his CHC or the offense level. Based on the reasons below, Mr. Starkweather joins the USPO and the government and respectfully requests that this Court impose a sentence of 87 months of custody, followed by three years of supervised release.

## II. APPROPRIATE SENTENCE

### A. The Overarching Principle

The very first sentence of 18 U.S.C. § 3553(a) establishes the following requirement: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in subparagraph (2) of this subsection." The Supreme Court has described this as the "overarching provision" in § 3553(a). *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). This statement by the Supreme Court makes clear that this "parsimony principle" is not mere precatory language but is the key requirement that a sentence must satisfy.

Factors which § 3553(a) directs a district court to consider in addition to the guidelines are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of sentencing; (3) the kinds of sentences available; and (4) the need to avoid unwarranted sentence disparities.

### B. Relevant Section 3553 Factors in this Case

#### 1. Mr. Starkweather's History and Characteristics

Mr. Starkweather was born in 1984 and is now 39 years old. He is the child of Michael and Lisa Starkweather. Mr. Starkweather is the second oldest of four siblings born to his parents. At the age of four, his parents separated and for the next six years, he was raised by his mother who did not work and was supported by government assistance.

Mr. Starkweather was always a fidgety, hyperactive child. He felt that other kids his age found him annoying because he was always so full manic energy. He was always embarrassed that he couldn't control himself and caused so much trouble at school. The impulsive behavior continued until he was finally diagnosed with attention deficit hyperactivity disorder ("ADHD") in the second grade. ADHD is a brain disorder marked by an ongoing pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development. Mr. Starkweather was treated with psychotherapy and medicated with Ritalin, which is a stimulant.

Ritalin and methamphetamine share a very similar chemical makeup. According to the National Institute on Drug Abuse, misuse of prescription stimulants like Ritalin can lead to a substance use disorder, which takes the form of addiction in severe cases. Long-term use of stimulants, even as prescribed by a doctor, can cause a person to develop a tolerance, which means that he or she needs higher and/or more frequent doses of the drug to get the desired effects. We don't know exactly what happened in Mr. Starkweather's case, but it seems that his early treatment for ADHD with Ritalin seemed to have some link to his later addiction to methamphetamine at such a young age.

When he was 10 years old, he was getting into so much trouble at school that he went to live with his father. Just three years later, his father was killed in a car crash while driving to work. His father's death devastated Mr. Starkweather. His behavior in school continued to deteriorate and he was put into an alternative education program when he was in the 9th grade.

      **a.**    **Mr. Starkweather becomes addicted to methamphetamine at 17 years old.**

Mr. Starkweather was aimless and had a lot of time on his hands after his father passed away. He was put into a homeschooling program but dropped out after only six months. He started experimenting with various drugs and by the time he was 17 years old, he was a daily user of methamphetamine. Mr. Starkweather has a long criminal

history. However, his convictions are typical of someone that has been suffering from a drug addiction since he was a child. Mr. Starkweather has five possession of controlled substance or paraphernalia convictions between the ages of 19 to 21. Two of these convictions, although only for possession of drugs and resulted in a combined 12 days of jail, made him a prohibited person that could never possess a firearm.

Mr. Starkweather first went to prison at the age of 25 for being a felon in possession of a firearm. After his release, he was still addicted to methamphetamine, and he returned to prison repeatedly.

### b. Mr. Starkweather finally realizes that he must address his addiction.

When he was 18 years old, Mr. Starkweather became a father to his daughter, Destiny Starkweather. Mr. Starkweather was young, addicted to methamphetamine and going in and out of jail. He was in no place to be a father to anyone. Several years later, he started a relationship with Lisi-Ann Vera, who had a one-year-old daughter at that time. Mr. Starkweather and Ms. Vera never married, but Mr. Starkweather raised Ms. Vera's daughter as his own child. Ms. Vera's daughter, M.M. is now 16 years old. Mr. Starkweather is the only father M.M. has ever known and calls him her dad. She writes, "[m]y dad, he's a great father and yes he has messed up a lot, I know . . . He is a very important person in my brothers life and in my life too." *See* Exhibit A, letters of support. Mr. Starkweather also has a 10-year-old boy with Ms. Vera.

Mr. Starkweather's drug use has been a source of shame and embarrassment his whole life. Now that he is facing a lengthy federal sentence and knows that he won't be around for his children's teenage years, Mr. Starkweather knows that the only person that can change his behavior is himself. To that end, he wants to participate in the Residential Drug Abuse Program ("RDAP") while in custody in this case. Mr. Starkweather understands that he will not get any credit off of his sentence for his participation in RDAP because of the nature of the offense in this case. However, he wants RDAP, not to get time off, but because he needs the help.

### 2. Just Punishment, Deterrence, Public Protection, and Respect for the Law

The considerations of just punishment, deterrence, public protection, and respect for the law will be advanced by Mr. Starkweather's proposed sentence. Removing Mr. Starkweather from society for 87 months will likely afford protection to the public for the rest of Mr. Starkweather's life. Such a sentence is three and a half times longer than any sentence previously imposed on Mr. Starkweather. Although he has many prior convictions, the longest sentence ever imposed on Mr. Starkweather is 24 months. Of that sentence, Mr. Starkweather only served a fraction.

Regarding deterrence, while it has been demonstrated that the certainty of getting caught can produce a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Justice 1, 28-29 (2006); see also Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Generally, few criminals are aware of the specific penalties for crimes and fewer still believe they will be apprehended and convicted. *See* Tonry, *Purposes and Functions of Sentencing*, *supra*, at 28-29. In other words, the idea that longer sentences produce greater amounts of deterrence is simply not supported by evidence. M.J.G Bun *et al.*, *Crime, Deterrence and Punishment Revisited*, Empirical Economics 59, 2302-2333 (2020).

///
///
///
///

### III.   CONCLUSION

The defense respectfully requests that the Court impose a sentence of 87 months of custody, followed by three years of supervised release.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 3, 2023         By   */s/ Young J. Kim*
YOUNG J. KIM
Deputy Federal Public Defender

## PROOF OF SERVICE

I, **Kimberly Lopez**, declare that I am a resident or employed in Riverside County, California; that my business address is the Office of the Federal Public Defender, 3801 University Avenue, Suite 700, Riverside, California 92501, (951) 276-6346; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **MICHAEL ALLEN STARKWEATHER'S SENTENCING MEMORANDUM; EXHIBITS** on the following individual(s) by:

[ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows:

[ ] Placing same in an envelope for hand delivery addressed as follows:

[ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

[X] via E-Mail addressed as follows:

**KIM CASSULO**
U.S. Probation Officer
[Kim_Cassulo@cacp.uscourts.gov]
Los Angeles (Roybal), CA

This proof of service is executed at Riverside, California, on **July 3, 2023.**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
**KIMBERLY LOPEZ**